# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| RICHARD S. WALLICK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-2063 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13, 15 |
| | : | | |
| AGRICULTURAL MARKETING SERVICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case stems from a Freedom of Information Act request for documents pertaining to the Organic Materials Review Institute's application for accreditation as a Material Review Organization, which empowers it to review and certify materials as compliant with federal organic regulations. The central issues presented in this case are the adequacy and scope of the agency's search for the documents requested and the propriety of the redaction of a single sentence pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5). Defendant Agricultural Marketing Services, a component of the U.S. Department of Agriculture and the agency tasked with certifying[1] groups as Material Review Organizations, has moved for summary judgment on the grounds that its search in response to the FOIA request at issue was reasonable and adequate

---

[1] While the regulations regarding this process refer to such organizations as being "accredited" to certify products as organic, *see* 7 C.F.R. § 205.501, the parties in this case refer to the process as "certification" to certify products as organic. The Court adopts the parties' terminology for the purposes of this Memorandum Opinion.

and its redaction pursuant to 5 U.S.C. § 552(b)(5) was proper. Plaintiff Richard Wallick has

cross-moved for summary judgment, asking the Court to find Defendant's search inadequate and

its redaction insufficiently supported. For the reasons set forth below, the Court will grant in part

and deny in part Defendant's motion for summary judgment, and grant in part and deny in part

Plaintiff's cross-motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2016, Plaintiff Richard Wallick, through his attorney David Stotter,

submitted a FOIA request by email to the U.S. Department of Agriculture's Agricultural

Marketing Service (AMS). The request sought:

1.  The complete application submitted by the Organic Materials Review Commission
    (OMRI) for that organization to produce technical reports for the NOSB's ISO 65
    program, including any attachments filed with, or in support of, this OMRI application,
    as well as copies of all documents for the USDA AMS's review of that application, and
    all documents for the USDA AMS's decision approving this application, including any
    communications within USDA AMS, and any communications with other subdivisions
    of USDA, and any communications between USDA AMS and OMRI regarding the
    above referenced application.
2.  All documents in the possession or control of AMS for any follow-up action pertaining to
    the review and/or approval of the application described in item 1 above, or discussing
    the USDA's process for the application described in item 1 in the paragraph above.

Ex. 1, ECF No. 13-1 at 10–11. The time frame for the records he sought was January 1, 2007 to

February 25, 2016. *Id.* at 10.

OMRI is a Material Review Organization (MRO) based in Eugene, Oregon. "As a MRO,

OMRI is an [non-governmental] entity accredited or authorized to review and approve materials

as compliant with USDA organic regulations. This accreditation is not a contract, but rather an

authorization to certify products as organic." Bridges Decl. ¶ 6, ECF No. 13-1. The purpose of

Mr. Wallick's FOIA request, as stated in the request, was to "prepare reports to [national and

regional food safety and agricultural safety organizations] to facilitate their educational and legal campaigns promoting food safety, and in promoting the appropriate use of organic agriculture." Ex. 1, ECF No. 13-1 at 11.

On March 7, 2016, Plaintiff submitted a "revised and corrected" request. Compl. ¶ 15, ECF. No. 1. The manner in which this request was different from the original February 25 request is unclear from the record, and AMS never admits to receiving the revised request. Instead, on March 10, 2016, AMS's FOIA Officer Gregory Bridges emailed Mr. Stotter confirming receipt of the February 25 request on March 7 and assigning the request a tracking number. Ex. 2, ECF No. 13-1 at 17.

Five weeks later, Mr. Stotter emailed Mr. Bridges inquiring as to the status of his client's FOIA request. The next day, the two spoke on the phone. *Id.* at 16. After the call, Mr. Bridges sent a follow-up email, characterizing their discussion as having modified Mr. Wallick's FOIA request to include:

1. The complete application, and supporting documentation, submitted by OMRI for that organization to produce technical reports for NOSB's ISO 65 program,
2. All AMS communication related to the processing of this application, and
3. All AMS communication related to OMRI's ISO certification.

*Id.* at 16.

Mr. Stotter replied three hours later disagreeing with the characterization that he had modified the request and clarifying that item 2 in the original request should also be interpreted to include "any records pertaining to any follow-up actions by USDA as to the OMRI application to produce technical reports for NOSB's ISO 65 program." *Id.* at 15. Mr. Bridges responded the next morning that he agreed that "modify" was not the correct characterization of their telephone conversation, and further clarified that he now understood item 1 of the request to mean:

1. The complete application, and supporting documentation, submitted by OMRI for that

      organization to produce technical reports for NOSB's ISO 65 program,

2. Any communication and records in AMS's possession related to the processing of this application, and

3. An [sic] communication and record in AMS's possession related to OMRI's ISO 65 certification.

*Id.* at 14. He further clarified that he now understood item 2 of the request to be seeking "copies of any records pertaining to any follow-up actions by USDA as to the OMRI application to produce technical reports for NOSB's ISO 65 program." Mr. Stotter responded that he agreed with these interpretations. *Id.*

      AMS began its search for responsive records on April 25, 2016. Mr. Bridges selected Mike Lopez, Supervisory Agricultural Marketing Specialist in the Audit, Review, and Compliance Branch of AMS's Livestock, Poultry, and Seed Program (LPS) Quality Assessment Division to search for LPS records responsive to the request. Bridges Decl. ¶ 12. "Mr. Lopez searched incoming and outgoing emails within AMS networked share drives, workstation, and shared network systems" on the belief that "these [were] all the places likely to have all responsive records." Bridges Decl. ¶ 13. "[H]ard copy formats were not searched because AMS does not maintain any physical copies of records received from onsite audits." *Id.* Mr. Lopez's search for all documents containing the terms "Organic Materials Review Institute" and "OMRI" yielded 58 documents containing 88 pages "responsive" to Mr. Wallick's request. *Id.* ¶ 14. The documents were released in full to Mr. Wallick on May 18, 2016, excepting information that was redacted due to FOIA's Exemption 6 concerning personal privacy.[2] Mr. Wallick has not

---

[2] FOIA's Exemption 6 allows agencies to withhold information from "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The redacted portions of AMS's first production contained actual signatures, social security numbers, and a personal telephone number. Bridges Decl. ¶ 14. These redactions contain the types of personal information which courts in this District have previously found to be properly withheld under the exemption

challenged AMS's decision to withhold this information.

In a letter attached to this interim disclosure, Mr. Bridges stated that the next disclosure of responsive documents would be delivered to Mr. Stotter "no later than June, [sic] 16, 2016." Ex. 3, ECF No. 13-1 at 20. However, AMS did not release its second and final disclosure until early winter.  In the interim, Mr. Wallick had filed this lawsuit on October 17, 2016, claiming that "AMS has violated FOIA by failing to provide Plaintiff with all non-exempt responsive records for his February 25, 2016 and March 7, 2016 FOIA requests, and by failing to complete an adequate search which was reasonably calculated to locate all response [sic] responsive records to his FOIA request." Compl. ¶ 20, ECF No. 1.

Although Defendant asserts that it had begun its second search on May 12, 2016, prior to the filing of the complaint, it did not provide its second and final disclosure of records from the National Organic Program (NOP) until December 22, 2016, after this action had commenced. For this search, Mr. Bridges selected NOP's FOIA Project Manager/Litigation Coordinator Lynnea Schurkamp, who searched the NOP cloud email network with the terms: "'Organic Materials Review Commission', 'Organic Materials Review Institute' AND 'ISO', 'Organic materials [sic] Review Institute' AND 'ISO 65', 'Organic Materials Review Institute' AND 'ISO 65 Program', and 'OMRI' and [sic] 'ISO 65.' Bridges Decl. ¶ 16–17. The search yielded 25 pages of "responsive" records, 24 of which were released in full, and one of which had a single sentence redacted pursuant to 5 U.S.C. § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than in litigation with the agency." The redacted line is the final sentence of a November 18, 2010 email from

---

because the individual interest in privacy outweighs the public interest in disclosure. *See e.g.*, *Parker v. U.S. Dep't Justice*, 986 F. Supp. 2d 30, 36–37 (D.D.C. 2013).

Deputy Administrator for NOP Miles McEvoy to Lisa M. Brines, also of NOP, acknowledging receipt of an email from Dr. Brines telling him that OMRI was refusing to allow her to observe an upcoming audit due to the organization's confidentiality agreement. Ex. 4, ECF No. 13-1 at 129.

AMS claims that "[t]he sentence in the email withheld contained communications between AMS staff members that contained pre-decision records, and dealt with pre-decisional inter-agency discussions on how to approach a decision involving an upcoming audit of OMRI." Bridges Decl. ¶18. In its *Vaughn* Index, AMS describes the sentence as consisting "of internal discussion about OMRI's decision not to permit a NOP staff member to attend its certification process. – Disclosure of the information would reveal pre-decisional information and would reduce the likelihood of staff providing full recommendations in future on this issue." ECF No. 13-2 at 2. In its reply brief, AMS describes the line as "an exchange between NOP and OMRI employees concerning the announcement of a contract between OMRI and NOP," a contract "unrelated to OMRI's application into the ISO 65 program."[3] Def.'s Reply at 8, ECF No. 20.

On January 6, 2016, AMS filed its Answer to the Complaint, claiming that "Plaintiff's Complaint fails to state a claim upon which relief can be granted as no records were improperly withheld." Answer at 1, ECF No. 7. AMS then filed its motion for summary judgment, claiming that it has conducted a reasonable search in response to Mr. Wallick's request, and had properly asserted exemptions under § 552(b)(5) and (b)(6). Mr. Wallick cross-moved for summary judgment, claiming that AMS applied improper search terms to locate responsive records, did

---

[3] On October 5, 2017, the Court ordered that AMS submit an unredacted copy of this email for *in camera* review. Upon review of the full email, the Court has concluded that the redacted line pertained to a 2010 audit of OMRI, and not the unrelated contract. Therefore, this final description of the email in AMS's reply brief appears to have been made in error.

not search in all locations necessary to find all responsive records, failed to perform follow-up actions to locate further responsive records mentioned in the records it had found, and improperly withheld the last line of Mr. McEvoy's November 18, 2010 email under §552(b)(5). The parties' cross-motions for summary judgment are now ripe for decision.

### III.  LEGAL STANDARD

A court should only grant a motion for summary judgment when there is "no genuine issue of material fact" and the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to succeed on the motion, the moving party must demonstrate the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. Once the moving party has demonstrated the absence of a dispute of material fact, the non-moving party may not simply rely on the allegations in its pleadings, and must establish that there remains a dispute beyond more than the "mere existence of a scintilla of evidence." *Id.* at 252.

In reviewing a motion for summary judgment under the FOIA, the district court conducts a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). In a FOIA action in which the sufficiency of a search is challenged, a defendant agency must demonstrate "beyond material doubt that it conducted a search reasonably calculated to uncover all relevant documents" in order to succeed on summary judgement. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). The agency also carries the burden of demonstrating that any responsive records that were not provided were properly withheld pursuant to one of the nine express statutory exemptions. *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). The agency may carry that burden by submitting affidavits that "describe

the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). It is not sufficient for the agency to provide "vague, conclusory affidavits, or those that merely paraphrase the words of a statute." *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir. 1980). When an agency invokes an exemption, "it must submit affidavits that provide 'the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a de novo review." *Brown v. FBI* , 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (alternation in original). Agency affidavits sometimes take the form of a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), but there is "no fixed rule" establishing what such an affidavit must look like, *ACLU v. CIA*, 710 F.3d 422, 432 (D.C .Cir. 2013). "[I]t is the function, not the form, of the index that is important." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987).

## IV.  ANALYSIS

AMS has moved for summary judgment on the grounds that it conducted a reasonable and adequate search for the records requested, and that its exemptions under 5 U.S.C. § 502(b)(5) and (b)(6) were properly asserted. Mr. Wallick has cross-moved for summary judgment, contesting AMS's assertions regarding the adequacy of its search and claim of exemption under (b)(5). In particular, Mr. Wallick argues that AMS (1) "applied improper search terms for locating responsive records," Pl.'s Cross-Mot. Summ. J. at 6, ECF No. 15; (2) "did not search in all locations necessary to find all responsive records," *id.* at 7; (3) "failed to perform follow-up actions to locate further responsive records suggested by existing records," *id.* at 8;

and (4) "improperly redacted information pertaining to a discussion of a decision made by the non-government entity (OMRI), and not material pertaining to any decision-making process of the federal agency," *id.* at 15.

AMS responds that Mr. Wallick's objection to the adequacy of its search mischaracterizes the facts regarding the search and impermissibly attempts to "broaden[] his FOIA request at issue before the Court to include additional records not requested." Def.'s Reply at 2. It further argues that it appropriately asserted Exemption 5 when it withheld one sentence of an email because the sentence was protected from disclosure pursuant to the deliberative process privilege. The Court will address each of AMS's and Mr. Wallick's arguments in turn.

### 1. The Scope of the Mr. Wallick's Request

In order to determine whether a search for responsive records was adequate, a court must first determine the scope of the documents the plaintiff requested. Here, the scope of Mr. Wallick's February 25, 2016 FOIA request is in dispute. AMS argues that Mr. Wallick's FOIA request only sought documents relating to OMRI's original application for ISO 65 certification. Def.'s Reply at 3. In contrast, Mr. Wallick argues that applications for recertification and audits relating to those applications were encompassed by his request. Pl.'s Reply at 3–5, ECF No. 22.

The plain language of the original request clearly indicates an interest only in documents related to a single application for certification, rather than several. *See* Ex. 1, ECF No. 13-1 at 10–11 (requesting "[t]he complete application" and documents pertaining to it). However, the language of the "clarifying" emails adds some ambiguity to the scope of the request. *See* Ex. 2, ECF No. 13-1 at 14, 16. The main source of controversy regarding the scope of Mr. Wallick's request appears to stem from different interpretations of the phrases "follow-up actions by USDA as to the OMRI application to produce technical reports for NOSB's ISO 65 program"

and "[a]ll AMS communication related to OMRI's ISO certification," language which appeared in the clarification emails, but not in the original FOIA request. *Id.* Mr. Wallick believes that a request for documents pertaining to these "follow-up actions" and OMRI's "certification" encompasses all "records which were required to be submitted by OMRI in response to the various applications and audit reviews performed by the agency." Pl.'s Cross-Mot. Summ. J. at 10. But AMS asserts that documents concerning audits and recertifications of OMRI are "not responsive to Plaintiff's FOIA request," as those processes are "separate and unrelated to the OMRI's IS[O] 65 program application process." Def.'s Reply at 5. Consequently, AMS contends that "any records beyond the initial certification date [are] outside the scope" of the request. Suppl. Bridges Decl. ¶ II.B, ECF No. 20-1. For the reasons set forth below, the Court concludes that Mr. Wallick's FOIA request only included a request for OMRI's original application for certification as an MRO, and all documentation related to that application, and not subsequent applications for recertification and documents related to those applications.

A FOIA requester has an obligation to "reasonably describe[]" the records he seeks. 5 U.S.C. § 552(a)(3). However, an agency analyzing his request "also has a duty to construe [the] FOIA request liberally." *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). For example, an agency may not withhold records that are reasonably within the scope of a request on the grounds that the records have not been specifically named by the requester. *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1329 (9th Cir. 1995). Additionally, the agency may "not . . . read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985).

In determining how to interpret the contested phrases, this Court must look to whether the phrasing was specific enough so that "a professional employee of the agency who was familiar with the subject area of the request" would be able to "locate the record with a reasonable amount of effort." *Truitt v. U.S. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) (quoting H.R. Rep. No. 876, 93d Cong., 2d Sess. 5–6 (1974)). "The linchpin inquiry is whether the agency is able to determine 'precisely what records are being requested.'" *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (quoting S. Rep. No. 854, 93d Cong., 2d Sess. 10 (1974)).

In his reply, Mr. Wallick provided several reasons why this Court should find that AMS did not meet its duty to construe his request liberally when it read the request to only include a request of documents relating to OMRI's original certification, as the agency now argues it has done. The Court finds none of these arguments persuasive enough to adopt Mr. Wallick's reading of his request.

Several of Mr. Wallick's arguments concern what he perceives to be the only reasonable reading of his FOIA request and Mr. Bridges's subsequent clarifying emails. He argues that "the plain language of the parties' statement of what they understood the request to encompass clearly covers certification—meaning the state of being certified—since it covers any communication within the agency's possession 'related to OMRI's ISO certification.'" Pl.'s Reply at 3. Plaintiff is correct that the word "certification" could mean the state of being certified. However, it could also very easily mean the process of being certified. Because the language in the parties' agreement is ambiguous, the Court cannot rely on the plain language of the agreement alone, and instead must look to the context in which the language is used. The phrasing 'related to OMRI's ISO certification' did not originate from his FOIA request, but rather his and Mr. Bridges's joint interpretation of his FOIA request, which Mr. Wallick's attorney insisted was not a modification

of the original FOIA request. That original request only requested documents relating to "the complete application" OMRI submitted. Ex. 1, ECF No. 13-1 at 10–11. At no point does it reference any subsequent applications or give any indication as to what other processes Mr. Wallick was interested in. Read in this context, the Court cannot conclude that the plain meaning of the agreement indicates that Mr. Wallick requested every document in AMS's possession related to the actions OMRI took to maintain its ISO certification.[4]

Mr. Wallick further argues that because his request did not specify that it only sought records pertaining to the 2007 application and because no such distinctions between the original certification application and subsequent recertification applications were made during his follow-up discussion with AMS, AMS should not be permitted to make such a distinction now. Pl.'s Reply at 4. This argument is unavailing. Agencies must interpret FOIA requests liberally and reasonably, but they need not extend the meaning of the request to include things not asked for. *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) (finding agency's interpretation of request reasonable when agency determined that request seeking records pertaining to tax audit did not include records pertaining to appeal of tax audit); *Mogenhan v. Dep't Homeland Sec.*, No. 06-2045, 2007 WL 2007502, at *3 (D.D.C. July 10, 2007) (citing *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)) ("The D.C. Circuit has held that an agency must read a FOIA request as it is drafted—not as the requester might wish it was drafted.")

---

[4] Mr. Wallick also claims that audits and renewal certifications are encompassed in his request because he asked for "records pertaining to any follow-up actions by USDA as to the OMRI application." Pl.'s Reply at 2. However, his analysis of this statement belies an issue with the language of his original request and Mr. Bridges's final clarifying email, of which he approved. He argues that "no matter what, certification renewal 'pertain[s]' to 'follow-up actions' on the OMRI certification." *Id.* Of course, he did not ask for records of follow-up actions relating to the OMRI "certification," but rather the OMRI "application." *See* Ex. 2, ECF No. 13-1 at 14. Therefore, this argument is unpersuasive.

When Mr. Wallick asked for information regarding "the application" and then insisted that his original FOIA request had not been modified through communications between Mr. Strotter and Mr. Bridges, AMS was not making a distinction between applications for certification and applications for recertification—Mr. Wallick was. The agency was simply reasonably interpreting his FOIA request, which asked for materials related to a single application.

Mr. Wallick in turn argues that AMS's interpretation was not reasonable given the context of his request. First, he argues that if his request were interpreted as only seeking OMRI's initial application for certification, the timeframe of the records he requests (January 1, 2007 to February 25, 2016) would make little sense, when OMRI's initial application for certification was approved on December 17, 2007. Such a reading would indeed render peculiar his date specifications. However, if there was any confusion as to the meaning of the FOIA request, Mr. Wallick would have had an opportunity to correct that confusion when his attorney spoke with Mr. Bridges over the phone on April 19, 2016. But that conversation did not yield language that clearly asked for documents related to recertification applications and audits, but rather yielded language that vaguely referenced OMRI's "certification," which, as explained above, could refer either to the process of being certified or the state of being certified. Therefore, it was not unreasonable for AMS to assume that the scope of Mr. Wallick's FOIA request sought documents concerning "the application," despite the dates he included in his request.

Additionally, Mr. Wallick argues that AMS's reading of his request renders the latter two components of his request repetitive of the first two, which was not his intention. Pl.'s Reply at 3. He is correct that under AMS's reading of the request, a request for "record[s] in AMS's possession related to OMRI's ISO certification" and "copies of any records pertaining to any

follow-up actions by USDA as to the OMRI application" overlaps a great deal with a request for "[t]he complete application, and supporting documentation, submitted by OMRI" and "[a]ny communication and records in AMS's possession related to the processing of this application." Pl.'s Reply at 2; Ex. 1, ECF No. 13-1 at 14. However, these components of the request need not necessarily be read to be duplicative, as there are documents that could fall into one category but not others.

For example, "an[y] communication and record in AMS's possession related to OMRI's ISO certification" includes communications between OMRI and AMS regarding OMRI's initial application, records which would not be found in OMRI's original application. And "records pertaining to any follow-up actions by USDA as to the OMRI application" refers to any number of actions AMS took before certifying OMRI as an MRO, including its participation in the initial audit of OMRI, which occurred around the time that OMRI was certified as an MRO, but which was not necessarily related to the processing of the application itself. *See* Ex. 3, ECF No. 13-1 at 27; *see also* Suppl. Bridges Decl. at 3 (admitting that the initial audit, mentioned at R004, was within the scope of Mr. Wallick's FOIA request). Therefore, while there is certainly a great deal of overlap between the categories of documents requested when reading the FOIA request and follow-up emails in the manner AMS advocates, the categories are not duplicative, and therefore should not be assumed as such.

Mr. Wallick's last set of arguments concern what he perceives to be agency admissions of his correctness. First, he argues that "the renewal certificates are very similar in form to the original certification, suggesting that 'recertification' is not a distinction with much meaning within the agency." Pl.'s Reply at 4. Second, he points out that "Defendant admittedly actually provided audit materials as well as the actual renewal certifications, strongly suggesting that its

new interpretation of the agreed scope of the request (at odds with their own summation of the understanding of the parties) is a litigation position with no basis in the actual understanding of the scope of the request." *Id.*

The fact that different documents from a single agency look similar does not necessarily mean that those documents were created as part of the same process, or more particularly, in response to the same application, however. This is especially so when the agency's own regulations refer to applications for certification and recertification as separate applications. *Compare* 7 C.F.R. § 205.502 (applying for accreditation) *with* 7 C.F.R. § 205.510(c) (renewal of accreditation). Because Mr. Wallick has provided no additional evidence to the contrary, the Court will accept Mr. Bridges's assertion that the processes are distinct. Suppl. Bridges Decl. at 3.

However, the fact that AMS did provide audit and recertification materials in its interim and final responses, and classified them as "responsive" in its motion for summary judgment and accompanying declaration, does raise the question of how the agency originally interpreted the FOIA request. The agency now claims that it provided these documents out of generosity rather than an obligation under FOIA. If the agency believed this throughout the course of this litigation, it remains unclear why it did not specify this position in its releases to Mr. Wallick or in it motion for summary judgment.

When AMS released its interim response to the FOIA request, it included dozens of pages of records relating to audits that occurred after OMRI's initial certification, calling those records "responsive" in the release's accompanying cover letter and not clarifying that it believed any of the records were non-responsive or outside the scope of the request. Ex. 3 at 1, ECF No. 13-1 at 20. In its final response, AMS released 25 pages of "responsive records," none

of which related to OMRI's initial application for ISO 65 certification. Ex. 4, ECF No. 13-1 at 110–136. Additionally, in his declaration accompanying AMS's motion for summary judgment, Mr. Bridges indicates that there is a specific portion of the second records release that he believed was not responsive to Mr. Wallick's request, but which he saw no harm including in the release anyway: documents regarding a contract to develop a Permitted Substance List between OMRI and AMS. Bridges Decl. ¶¶ 19, 20. He does not mention in his declaration that he believed any other category of documents released fell outside the scope of Mr. Wallick's request. Following the filing of Mr. Wallick's cross-motion for summary judgment, however, Mr. Bridges and AMS began to insist that AMS had interpreted the request as seeking only documents related to OMRI's initial application for certification. Perhaps not purposefully, this claim implies that the vast majority of the documents released to Mr. Wallick in 2016 were not, in fact, responsive to his FOIA request. Suppl. Bridges Decl. at 2–3.

However, the agency's seeming change in its interpretation of the FOIA request is of little consequence when determining the scope of this FOIA request, as it is this Court's duty to review the record *de novo*, and therefore to interpret the scope of the FOIA request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). As explained above, the plain meaning of the FOIA request clearly indicates an interest in only a single application and the follow-up actions pertaining to that application. The clarification emails were specifically stated to not be modifications of the request, and therefore cannot be read to broaden the scope of the request. As such, this Court finds that it is the agency's current reading of the request is the more reasonable interpretation, and therefore it is that interpretation that the Court will use in resolving these motions for summary judgment.

For all the reasons set forth above, the Court finds that AMS's current position that Mr. Wallick's FOIA request only sought information pertaining to OMRI's initial application for certification, and any follow-up actions relating to that initial application, is reasonable, and should therefore govern the scope of its search for responsive documents. If Mr. Wallick still wishes to receive documents pertaining to applications for recertification and audits related to those applications, he must submit another FOIA request to AMS.

## 2. Adequacy of the Search

Having determined the scope of Mr. Wallick's FOIA request, the Court can now assess the parties' arguments regarding the sufficiency of AMS's searches for responsive records. AMS has moved for summary judgment on the ground that it "demonstrate[d] beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)), and that it has described "in reasonable detail the scope and method of the search," *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). Mr. Wallick objects to AMS assertions on the sufficiency of its searches on three grounds: that (1) "AMS applied improper search terms for locating responsive records," Pl.'s Cross-Mot. Summ. J. at 6; (2) that it "did not search in all locations necessary to find all responsive records," *id.* at 7; and (3) that it "failed to perform follow-up actions to locate further responsive records suggested by existing records," *id.* at 8. The Court will address each of these objections in turn.

"The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Jennings v. U.S. Dep't of Justice*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde v. Comptroller of Currency*, 315

F.3d 311, 315 (D.C. Cir. 2003)). "In adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits," provided they are "relatively detailed," "nonconclusory," and "submitted in good faith." *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). And even if they are "relatively detailed," "nonconclusory," and "submitted in good faith", "the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Id.* (internal quotation marks omitted). As explained below, two of Mr. Wallick's objections, that AMS "did not search in all locations necessary to find all responsive records," Pl.'s Cross-Mot. Summ. J. at 7, and that it "failed to perform follow-up actions to locate further responsive records suggested by existing records," *id.* at 8, prevent the Court from granting summary judgment to AMS concerning the adequacy of its search.

### A. Search Terms Used

Mr. Wallick first argues that the search terms AMS used when responding to his request were impermissibly strict. Pl.'s Cross-Mot. Summ. J. at 6–7. His major objection to the search terms AMS used to identify responsive records rests on his belief that the inclusion of the word "and" in Mr. Bridges's declaration means that the searches performed by the agency only retrieved documents that included all the terms contained within each search phrase. Pl.'s Cross-Mot. Summ. J. at 6–7. He argues that this inclusivity requirement applied to both of the searches AMS conducted: the first search, in which "Mr. Lopez searched incoming and outgoing emails within AMS networked share drives, workstation, and shared network systems" for documents containing "Organic Materials Review Institute" and "OMRI," Bridges Decl. ¶¶ 13–14; and the second search, in which Ms. Schurkamp searched the National Organic Program cloud email

network using the search terms "'Organic Materials Review Commission,' 'Organic Materials Review Institute' AND 'ISO'; 'Organic materials Review Institute' AND 'ISO 65'; 'Organic Materials Review Institute' AND 'ISO 65 Program'; and 'OMRI' and 'ISO 65.'" *Id.* ¶¶ 16–17.

AMS responds that, when conducting a search, "keywords are not treated as phrases unless we specifically state that they are to be treated as phrases," and that "the agency does not require responsive records to contain all of the listed search terms within any particular record." Suppl. Bridges Decl. at 2. Although not stated directly, AMS implies with this statement that it did not treat the keywords as phrases in any of these searches, and in its brief represents affirmatively it did not. Def.'s Reply at 4. Mr. Wallick does not rebut this assertion with any evidence in his own reply,[5] instead focusing on what he perceives to be other deficiencies in the AMS's arguments, and thereby conceding this argument. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982) ("any factual assertions in the movant's affidavits will be accepted by the district judge as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion.").

Therefore, based on Mr. Bridges's first and second declarations, which detail the types of search terms used and the inclusivity of the types of the documents those search terms would retrieve, and Mr. Wallick's failure to provide any countervailing evidence in the record, the Court finds that the search terms were not deficient, but rather reasonably calculated to uncover all documents relevant to the search.

---

[5] For example, he could have tried to rebut this assertion with the fact that none of the documents he received contained only part of the search terms used (e.g. none of the documents in the first production contained "Organic Materials Review Institution," but not "OMRI").

## B. Search Locations and Record Systems

Mr. Wallick also argues that AMS did not search in all locations and systems likely to hold responsive records. Pl.'s Cross-Mot. Summ. J. at 9. For example, Mr. Wallick points out that "many of the responsive records which were provided indicate agency involvement with the subject matter of Plaintiff's FOIA request was undertaken by the USDA's Audit and Review Compliance (ARC) Office, located in Fredericksburg, Virginia," but that office was not searched. *Id.* He also objects to AMS's failure to search for paper records maintained by the agency, because some of the documents released to Mr. Wallick indicate that at certain times OMRI was required to submit hard copies of records to the agency as part of its Applications for Service. *Id.* at 10. Mr. Wallick also notes that "[t]he notable absence of documents the agency surely should have (the application materials for the OMRI, for instance) is strong circumstantial evidence that a call to agency employees for any paper files they may keep should have been made, particularly after the electronic search produced so few records." Pl.'s Reply at 7.

AMS argues that the Fredericksburg office to which Mr. Wallick refers in his cross-motion was not searched individually because it has been closed, but that its electronic files are still accessible via the servers it searched in response to his request, and therefore that any responsive electronic files from that office would have been retrieved during AMS's first two searches. Def.'s Reply at 4–5; Suppl. Bridges Decl. at 2. It further explained that "[i]t is a practice of the FOIA Office to not maintain paper records after an electronic version is created," without explaining how other, programmatic offices maintain their paper records. Suppl. Bridges Decl. at 2.

There is no requirement that an agency search every location or record system when responding to a FOIA request, nor that it uncover every relevant document. *See Meeropol v.*

*Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986) (search is not presumed "unreasonable simply because it fails to produce all relevant material"); *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (no requirement that an agency search every division or field office on its own initiative in response to a FOIA request when the agency believes responsive documents are likely to be located in one place). "However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "FOIA demands only a reasonable search tailored to the nature of a particular request. When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (citing *Oglesby*, 920 F.2d at 68).

Here, the agency has not sufficiently demonstrated that there are no other locations or record systems that are also likely to hold the types of documents requested. According to Mr. Bridges, AMS searched emails in the AMS networked shared drives, workstation and shared network systems, and NOP's cloud email network. Bridges Decl. ¶¶ 13, 16. He conclusorily asserts that these were the only places likely to have responsive records, but he never explains why this is so. He never explains how OMRI's application would have made it onto either email system: for example, he never states that OMRI submitted its application by email rather than in paper form, or that it is common practice for AMS employees to email these kinds of applications to each other, thereby uploading them to the agency's email server. As such, AMS's statement that the two networks searched were the only places likely to have all responsive records is merely conclusory. Without additional background information, this Court cannot

determine whether AMS did indeed search in locations likely to have all responsive records or whether a search for paper records located in the programmatic offices would have also been appropriate. *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007).

### C. Follow-up Actions

Mr. Wallick also argues that the search was insufficient because AMS did not "follow-up on any known leads for additional responsive records for Plaintiff's FOIA request indicated by the existing record," citing to *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79 (D.D.C. 2015). Pl.'s Cross-Mot. at 10. He lists several places in the production where he believes responsive records indicate that other records in AMS's possession might be responsive, *see id.* at 10–14, and argues that he is entitled to receive these documents because he requested all "records which were required to be submitted by OMRI in response to the various applications and audit reviews performed by the agency associated with the subject matter of Plaintiff's FOIA request." *Id.* at 10. AMS counters that it "is not obligated to search for records identified in non-responsive records." Suppl. Bridges Decl. at 5.

The adequacy of an agency's search for responsive records may be undermined by "the fact that the record itself reveals positive indicators of overlooked materials." *Kleinert*, 132 F. Supp. 3d at 88 (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999)). But while an agency has a duty to follow-up on any known leads, "mere reference to other files does not establish the existence of documents that are relevant to [a] FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail." *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 552 (D.C. Cir. 1994). "An agency has discretion to conduct a standard search in response to a

general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry. Consequently, the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).

All but one of the leads to which Mr. Wallick cites are not only within documents that are non-responsive to his request, but the leads themselves point to documents that are not responsive, as they reference documents pertaining to applications for recertification and related audits. Indeed, the only indication Mr. Wallick identifies toward a missing relevant document is a reference to "internal audit results" that a Quality Systems Verification Programs Review Committee stated it would need to review before AMS conducted its first onsite audit of OMRI in 2007. *See* Ex. 3, ECF No. 13-1 at 24. However, as Mr. Bridges explained in his supplemental declaration: "internal audits are conducted by OMRI on themselves," "any records reviewed by AMS during audits are returned to the client," and "AMS is not required to collect records reviewed during an audit nor is it a practice of the agency to do so." Suppl. Bridges Decl. at 3. Based on this information, AMS was under no obligation to conduct a search for the internal audit documents mentioned at R004 because such a search would likely be fruitless. Accordingly, AMS's search was not inadequate due to its failure to follow-up on this known lead.

However, as Mr. Wallick emphasized when he argued that the agency's decision to only search email records was insufficient, Pl.'s Reply at 7, after the agency failed to retrieve a complete copy of OMRI's original application during its first two searches, it likely should have attempted to search elsewhere. AMS's interim release to Mr. Wallick contained several

documents pertaining to OMRI's original application, including a cover letter sent from OMRI's Executive Director, a two page Application for Service Form, a Quality Systems Verification Program Review Committee Minutes form, a Certificate of Conformance, and an audit report. Ex. 3, ECF No. 13-1 at 21–30. However, the release does not appear to contain any other part of OMRI's application for certification, including any supporting documents it submitted. *See* Ex. 3, ECF No. 13-1 at 21 ("Please review the accompanying program documentation, which outlines the procedures of OMRI in meeting the requirements of the USDA ISO Guide 65 Program."). Just as in *Kleinert*, the failure of the agency's search to uncover relevant documents that were supposed to be attached to already retrieved relevant documents "as standalone records that were responsive to" Mr. Wallick's request leaves "the Court in doubt about whether the agency has conducted a reasonable search." *Kleinert*, 132 F. Supp. 3d at 89. As much, AMS's motion for summary judgment must also be denied on this ground.

### 3. AMS's Invocation of Exemption 5

Having resolved the issues concerning the adequacy of AMS's search for documents, the Court turns to Mr. Wallick's challenge to the withholding of a single sentence pursuant to FOIA's Exemption 5. In its production of documents in response to Mr. Wallick's FOIA request, AMS redacted portions of a handful of documents, claiming exemptions under 5 U.S.C. § 552(b)(5) and 552(b)(6). Mr. Wallick only challenges the redaction of one sentence within a single email pursuant to Exemption 5. The single sentence withheld is the final line of a November 18, 2010 email from Deputy Administrator for NOP Miles McEvoy to Lisa M. Brines, also of NOP, acknowledging receipt of an email from Dr. Brines. Dr. Brines's email informed Mr. McEvoy that OMRI was refusing to allow her to observe an upcoming audit due to the organization's confidentiality agreement. Ex. 4, ECF No. 13-1 at 129. AMS withholds the

final sentence of this email pursuant to the deliberative process privilege, claiming that "[t]he sentence in the email withheld contained communications between AMS staff members that contained pre-decision records, and dealt with a pre-decisional inter-agency discussions [sic] on how to approach a decision involving an upcoming audit of OMRI." Bridges Decl. ¶18. In its *Vaughn* Index, AMS describes the sentence as consisting "of internal discussion about OMRI's decision not to permit a NOP staff member to attend its certification process . . . . – Disclosure of the information would reveal pre-decisional information and would reduce the likelihood of staff providing full recommendations in future on this issue." ECF No. 13-2 at 2.

Mr. Wallick has challenged the withholding, arguing that AMS "has not met its burden of establishing that the specific material which it is withholding under FOIA exemption (b)(5) pertains to any **<u>agency</u> decision making process** (as opposed to discussion of an **OMRI decision**), or how the release of the redacted portion of this record 'reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' Pl.'s Cross-Mot. at 16 (emphasis in original) (citing *In Re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). He continues that "[n]otably absent from Defendant's most recent Opposition filings is any evidence demonstrating that the material withheld under claim of FOIA exemption (b)(5) is a direct part of the agency's actual decision-making process, in making a recommendation or expressing opinions on specific agency decisions, as required for employing that FOIA exemption." Pl.'s Reply at 9. In response to Mr. Wallick's challenge to its withholding, AMS also argues that because the sentence in question

"is not responsive to Plaintiff's FOIA request, its withholding should have no impact on the grant of summary judgement to Defendant."[6] Def.'s Reply at 8.

An agency bears the burden of establishing that an invoked FOIA exemption applies to the records withheld. *Citizens for Responsibility and Ethics v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). An agency can meet that burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

Finding that agency's boilerplate justifications to be insufficiently specific to determine whether the document was properly withheld pursuant to Exemption 5, on October 5, 2017, the Court ordered AMS to produce an unredacted copy of the email for *in camera* review pursuant to 5 U.S.C. § 552(a)(4)(B). Upon review of the full email, the Court concludes that the sentence was impermissibly redacted.

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than in litigation with the agency." 5 U.S.C. § 552(b)(5). "Congress intended that agencies should not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of the FOIA." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). One such evidentiary

---

[6] This argument was made in the portion of AMS's reply brief that erroneously characterized this sentence as being within "an exchange between NOP and OMRI employees concerning the announcement of a contract between OMRI and NOP." Def.'s Reply at 8. This representation appears to have been made in error, as the line in fact pertains to a 2010 audit of OMRI, and not the unrelated contract. Because the Court has considered how the scope of Mr. Wallick's FOIA request applies to other arguments the Defendant has raised with regard to the sufficiency of its search, the Court will entertain this related argument, despite Defendant's error.

privilege encompassed by Exemption 5 is the deliberative process privilege, whose purpose is to protect the "decision making processes of government agencies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). "In deciding whether a document should be protected by the privilege" courts look "to whether the document is 'predecisional'—whether it was generated before the adoption of an agency policy—and whether the document is 'deliberative'—whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866. "This is ultimately a functional analysis—a document is 'part of the deliberative process if its disclosure would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Hunton & Williams v. EPA*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) (citing *Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 13 (D.D.C. 2000). "The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp.*, 617 F.2d at 866. "The identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Id.* at 868. The deliberative process privilege does not protect records that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–54 (1975).

Upon review of the redacted sentence, the Court has determined that is does not properly fall under Exemption 5. The redacted sentence is simply an off-hand comment from a supervisor to a subordinate employee about the potential effect of OMRI's decision to exclude the subordinate employee from an upcoming audit. It is not part of any identifiable deliberative process, nor does it appear to constitute a recommendation as to how the agency should proceed. And if it actually is part of such a deliberative process, the agency has produced insufficient detail for the Court to so find. Instead, the agency has relied on boilerplate language, such as its assertion that "it contained communications between AMS staff members related to decisional records, and dealt with a pre-decisional inter-agency discussion." Def.'s Reply at 8. As such, the agency has not met its burden of demonstrating that the sentence properly falls under Exemption 5.

Defendant has also argued that, in the alternative, the Court should not order the release of the sentence because it was found within a document that was not responsive to Mr. Wallick's FOIA request. Def.'s Reply at 8. Under this theory, even if the sentence were found to have been improperly withheld pursuant to Exemption 5, it could still be redacted because the agency was not required to release any portion of the document in the first place, but rather did so out of generosity.

Complicating this argument is the fact that AMS originally classified this email as responsive to Mr. Wallick's FOIA request. *See* Bridges Decl. ¶ 18 ("The responsive records produced in the response consisted of twenty-five pages."); Ex. 4, ECF No. 13-1 at 110 ("Enclosed are twenty-five (25) pages of responsive records."). While no court in this Circuit has dealt with the precise question of how it should treat an erroneous redaction made within a non-responsive document that the agency originally classified as responsive, the D.C. Circuit has held

that "under [FOIA's] statutory framework, once the government concludes that a particular record is responsive to a disclosure request, the sole basis on which it may withhold particular information within that record is if the information falls within one of the statutory exemptions from FOIA's disclosure mandate." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 670 (D.C. Cir. 2016). Thus, once an agency has deemed a document to be responsive and has produced it to the requester, regardless of whether it actually is or not, the agency may not redact information without sufficiently justifying such redaction pursuant to one of FOIA's statutory exemptions. For this reason, the Court cannot allow the agency to withhold this non-exempt, but also non-responsive, line, and therefore orders that AMS release an unredacted copy of the email to Mr. Wallick.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion for **SUMMARY JUDGMENT IS GRANTED IN PART AND DENIED IN PART**.  Defendant has not met its burden of "demonstrat[ing] beyond material doubt that its search" of AMS and NOP's email servers "was reasonably calculated to uncover all relevant documents," *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), nor has it met its burden of demonstrating that the sentence it redacted pursuant to FOIA Exemption 5 properly fell within that exemption. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 20, 2017                              RUDOLPH CONTRERAS
                                                                          United States District Judge